Where longer imprisonment results from agency action, a minimum level of due process is required. I had trouble figuring out what the punishment was, what was taken. To me it seemed like the prisoner was in the same position that I am if I tell Alaska Airlines I want to fly back to Alaska on the 415 Saturday plane, and they tell me you can't. The key difference is that here there was a revocation of a regulatory status, DAP wait, and as a consequence of the revocation he was placed on DAP decline. Let me be clear on what my concern is, I can't see that anything was taken away from him because he didn't have any right to anything, either getting into the program or getting the early release. Even if he did, it seems like he was offered the program, he just didn't take it because it wasn't in the part of the country that he wanted to be in. He wanted to be in the northwest and it was the southeast. Even if he did have a right to be in the program, he was given notice and an opportunity to be heard on whether he wanted to reconsider his decision and what the consequences would be. He said, I don't want to go to the southeast United States, I have to go to another prison, I want to stay near my family and be in a program. That's my problem. Nothing taken from him and due process despite the fact that they may not have needed to give it. I think there's governing Ninth Circuit authority on the first point and governing Supreme Court authority on the second. The Ninth Circuit authority I'd refer the court to is Bowen. In Bowen, the court looked at the exact same documents that were involved in this case. There was a formal determination of eligibility. There's not only a formal determination of eligibility, which alone in Bowen created a settled expectation, but here we had Bowen Plus. Not only was there a formal determination of eligibility, he was transferred from Taft near his family to Sheridan to take the program. He had to forsake all other programming in order to be on the DAP waiting list and he was on the DAP waiting list in the residential housing waiting for the program to start for at least seven months in Sheridan. We have Bowen Plus showing that he had a very clear settled expectation that the court has to go. I believe there was an interest that was deprived. I thought he never did get into the... I thought that the first offer was the program in the southeast and he wouldn't take it. And then he did get into the program in the northwest. It's just that when you turn down an offer of a program, you go to the end of the waiting list and he has to come back up. There's no rule that says anything close to that. What he was confronted with... There's a rule that says the opposite, that you should not go. You get to stay at the top of the waiting list while you turn down things. Yes, this is a heavily regulated area. I didn't see the rule that lets you stay at the top. It looked to me like a union hall where they offer you a job and you take it or else you go to the bottom of the A list. No, actually, I believe the executive record established that the way they do it is by your projected release date. So it's not hiring hall. It's by your projected release date. And what he did was, they said, do you want to voluntarily transfer? And a lot of what the fairness of this case is about is what do words mean? When you say a voluntary transfer and he says, I don't want to take a voluntary transfer, but I want to participate in the program in which I've always expressed an interest in doing and want to do so now. And as soon as he found out that he was off, put on DAP decline, he wanted to be back on. He never has not been willing to participate in the program. And it's a word of art in some ways because the statute at 3621 E5B2 says an eligible prisoner is somebody who is willing to participate in a residential substance abuse treatment program. He didn't go to the bottom of the list, did he? I thought he was actually removed from the program and had to reapply and get reconfirmed to get in at all. Before that, he had already been confirmed, he'd been given the program, he'd been told that he was eligible for release if he completed the program, etc., etc., at least per Bowen he was. Now, I may not agree with what Bowen said, but Bowen said that, that he had a settled expectation in the program. He was actually literally moved from this program, was he not? Yes. Yes. It's much more than being placed on the bottom of the list. He was deemed to have, he'd put on DAP decline. He had his DAP status revoked and a revocation involves, that results in here, a loss of four months of physical freedom requires at least the measure of due process set out in Wolf v. McDonnell. That goes to your second part of your question, Judge Kleinfeld, because here, first of all, there was no written notice, which is one of the minimum requirements. There was no opportunity to present his arguments and present evidence. He has, his family was coming up to visit him for the Mayfest in the program. He had good reasons for not wanting to go to Southeast, the Southeast region if it was told that he was a voluntary transfer. This wasn't voluntary. This wasn't, he was saying, I'm taking your word for it. Voluntary means I can say no without suffering consequences. Here, for not doing something that was voluntary. He suffered. The only consequence, it seems to me, that he suffered is the loss of a discretionary opportunity. It's more than that. Which, I mean, because he said he didn't want to go when it was available. He said that he did not want to take a transfer. He always said explicitly, and those are the uncontested facts in this case, at every moment, he said, I'm willing to participate in a program of residential substance abuse treatment. The one that was available that would have given him a shot at an earlier release, he didn't want. There's no such evidence in the record on this, Your Honor. Here, he was in a program, in that housing, waiting for his... But there wasn't an available slot in Charita. There was, I believe, and I think the uncontested facts show that he was... There's evidence that they offered 25 inmates, I believe, the opportunity to go back east. Right? Because it was available right then. Yes. And he said, nope, I don't want to do that. He said that he did not want to take a voluntary transfer. He said, I am not declining to participate in the program. Obviously. And the program was available there. He was scheduled to be in it. There's no evidence that he could have gotten into that program. I believe there's evidence both in the affidavits and the uncontested facts that he was scheduled to enter the program that spring. And I believe that even Dr. Solomon said that he was scheduled to be in it. You're talking about a later time, I think. There are three times. The first time, they offer him the program in the southeast. He says, no, I want to stay near my family. I don't want to have to make my way in a new prison. The second time, there's a program that starts in the northwest, and he would like to be in it. But because he declined the southeast program, he didn't get in it. And then the third time, there's a program available in the northwest, and he gets in it. Have I got the time sequence right? I guess I would step back in the time sequence to say that when he was in Taft, he was transferred to Sheridan for the express purpose of participating in the program. I'll also note that there are rules that we've cited in the brief saying that there's And that's the first time. That's the first transfer. Yes. From Taft to Sheridan to participate in the program. So what you're hanging it on is that he was transferred to participate in a northwest program, and then a southeast program became available earlier, and he declined it after his transfer to participate in the northwest program. That is correct, your honor. Now, I don't understand why this is a Bowen problem, because in Bowen, what happened was they adopted new regulations and applied them retroactively. In your case, I can't see that they adopted new regulations and applied them retroactively. I'm not concerned about the retroactivity aspect of it. More so, I'm referring to the settled expectation that puts this in the Wolf v. McConnell class. I noted in the Rule 28J letter that in analyzing a liberty interest, what we look to is the type of rules and regulations that exist so that if the agency action results in longer incarceration, that that is enough of an interest to be protected by at least a minimum of due process in the prison setting. And unless the court has questions here, I would like to reserve the remaining time. Surely. Mr. Bowman? Good morning, your honors. I would like to start not with the briefs that are before the court, but with the letter that Mr. Sady wrote yesterday, bringing to the court's attention the recent Supreme Court, by recent I mean June 13th of 2005, of Wilkinson v. Austin. This case was actually handled by a colleague of mine who's since retired, Craig Casey. So I had, sometimes, which is a blessing, I went through the whole record again. And last night, I spent more time reading Wilkerson. And the questions the court asked and the briefs in this issue assumed, I think, and now I think erroneously, that there was a liberty interest affected in this ongoing DAP program at Sheridan with regard to Mr. Dozier. The Supreme Court in Wilkerson recently said, the time has come to return to the due process principles we believe were correctly established and applied in Wolfe and Meacham. And then it refers to Sandlin, which is referred to in Mr. Casey's brief. And as you remember, Mr. Sandlin was put in segregation for 30 days. Segregation is usually pretty severe restrictions. The case in Wilkerson involved administrative maximum, a prison in Ohio in which it was really severe segregation. You're put in a single cell. You can't communicate with your room, with other cell mates. The lights are dimmed. It was a pretty severe situation. As the court said, we think we should go back. It also said, in the wake of Sandlin, the courts of appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical, significant in a particular prison system. And that goes to this, is it a liberty interest? And they mentioned one Ninth Circuit case, Keenan v. Hall. They then go on, because they found there was a liberty interest affected in this Wilkerson case. It had all of those things of segregation. But in addition, which they said affected the liberty interest, were these two factors. First is the duration. Unlike the 30 days in Wilkerson, the duration here had the potential of being unlimited. You could be in this situation the whole time you were in prison. The second was that if you were placed in this situation, you were disqualified from being paroled. And of course, parole is an expectation, but not a set that you will be paroled at any given time. And I will tie this back into, of course, getting into the DAP program. They then said that is what makes the liberty interest. But right below that, they said, while these conditions standing alone might not be significant to create a liberty interest, if you took one of them away, then it probably would not affect the liberty interest. I had the liberty of reading this case. I don't know whether the courts did because of the lateness of the notification, but I to take a look at this case and first examine whether or not there was a liberty interest affected in this particular case with regard to the change, the opportunity for him, Mr. Dozier, to go to the South and take the program or instead at FCI Sheridan to have it canceled, be on the wait list and start September 10th. If Bowen says that he had a subtle expectation to be in this program and to go through it and have their discretion ultimately exercised at a time when it could do him some good or as much good as he thought he might get, if Bowen says that, are you suggesting that this over a dissent, by the way, Bowen clearly does say that if you've gotten what this guy got, the same exact form, basically, if you've gotten that, you have a settled expectation called a liberty interest, call it what you want, but you've got a settled expectation that can't arbitrarily be taken away from you, period. That's what it says, doesn't it? Yes, that's what it says, and I don't have a problem with that. Settled expectation to participate in DAPT, is there a settled expectation of when you're going to participate in DAPT or how much time you're going to get off? As you'll know from looking at all the DAPT cases, Mr. Sadian's- Well, Bowen didn't just say a settled expectation to participate, it says a settled expectation to participate and have the possibility of actually getting time off. Yes, when your number comes up and you can get into the program. Sure. Okay? If I want, we'll deal now, briefly, with the facts of this particular case, if we find that there was a liberty interest affected. Let's say that this Bowen language, the critical ingredient is whether the inmate had been notified of early release eligibility. Let's say that the notification that he got that he'll be able to get into the program at Sheridan satisfies that and he's got a liberty interest in getting into the program. Where do you go from there? All right. Where I go from there is a line from Mr. Sadian's brief from Mr. Dozier. Under the uncontested facts, Mr. Dozier would have been released from prison sooner if not for the BOP's revocation of the DAPT weight and the reclassification of DAPT decline. Since I did not write the brief or do the case, I had the ability to go through the record again. As I went through that record and I read the quotes in Mr. Sadian's brief and then went back to the record, I could not find one place in the record where it indicated that if this had not occurred, Mr. Dozier would have started the program prior to September 10th anyway. What we know from the record is he wasn't going to make the March program if in fact there was one because his number hadn't come up. There is nothing that I could find in the record that says there was any classes between then and September 10th and if his number would have come up had he stayed on the list. The question then becomes, what did he lose? I went through all the quotes in Mr. Sadian's brief with regard to... You're saying even if the program person had not written decline, as far as the record shows, he would have gotten into the same program at the same time. That's what the record shows. The citations like to ER99 with regard to, hey, he was going to get in the program, the real words used there are Mr. Dozier was placed on the DAP wait list with the anticipation that he could enter the program in the spring of 2003. All the quotes to the record, although the brief speaks in definitive terms, all the references in the record are qualified. Nobody says in the record that I could find that he, Mr. Dozier, would have gotten in the DAP program at Sheridan any sooner than September 10th given where he was on the wait list. Or at least I couldn't find it. I realize it's a big record. And I went through the brief with those statements and I went back to where the brief said they were supported. I did not find them supported in absolute terms. There were terms like with the expectation, could have entered, but there weren't any terms that said would have entered the program on this date. It's a little surprising if the answer were as simple as that, that the state or the government didn't simply say in an affidavit, well, there were absolutely no slots available at all until September anyway. So it seems to me it would be a very simple piece of evidence to put in if it were true. So what we have before us is that it was anticipated, it was thought, believed that he would get in in the spring and nothing saying, sorry, no, that's not true. He wasn't going to get in in the spring. Judge, I wrote the affidavit, but the same argument applies to Mr. Dozier. If in fact he would have gotten in, why didn't he say so? He's out of Sheridan. Well, it seems to me the prison might have more information about each time a slot would become available. I've got to tell you, Judge, knowing inmates as I have over the years and Mr. Dozier was he knew when all those classes were starting as much as the administration. Often inmates know more about what's going on in the prison and the law than some of the officials whose real jobs are to manage prisoners, not to keep records and be in tune with what's going on. But it was in Mr. Dozier's interest to know what was going on. Would he have the personal knowledge to say whether he had gotten in earlier or not? Or is that exclusively the prison official's knowledge? I don't know the answer to that. I mean, I called out there to find that information, but it's not. It's like in our affirmative action cases, and the person says, I think I would have gotten in to the college if it hadn't been for their affirmative action program. But it's really only the admissions officer who can say he would have gotten in or he wouldn't have gotten in. That's true, but this is different. Mr. Dozier, inmate Dozier, now Mr. Sheridan, because he's out. He was at Sheridan. He was in the camp. That's where the whole program took place. I don't think that can compare to what you were just talking about because a person on a discrimination in admission, he doesn't know what's thinking, what's going on. He saw who was in class, who wasn't in class, and when all the classes started. He was right physically there until September 10th when his class started. Now, the record may not have been as good as it should have been, but as lawyers often lament, I wish I could go back and make the record and it didn't happen. All right. Thank you very much. Mr. Seay. Thank you, Your Honor. Three points. First of all, Wilkinson strongly supports Wolfe on the second aspect of liberty, which is liberty created by rules. It reinforces Wolfe and, of course, Wolfe did not involve a substantial or atypical hardship. What you see in all the Ninth Circuit and Supreme Court cases is a careful analysis excluding actual loss of time or greater imprisonment in any case involving the substantial or atypical hardship test. Second, on the facts, this is on summary judgment on a concise statement of facts where there were no controverted facts of what we presented, which was he expected to go in in spring. And I'd refer the Court to page 253 of the District Court in ruling against us, pointing out that there was at least a four-month loss of time. Lastly, this case is really simply about fairness. It's unfair to take away somebody's time and have them serve a greater period of incarceration when you tell them it's a voluntary transfer and they do not take a voluntary transfer. It's unfair to ask them to basically punish somebody with a greater period of incarceration with no opportunity to confront or to present to a neutral body, no opportunity for written notice. Thank you. Thank you. I understand the argument. The matter just argued that you submit it.
judges: Fernandez, Rymer, Kleinfeld